IN THE DISTRICT COURT OF THE UNITED STATES

FOR THE DISTRICT OF SOUTH CAROLINA

ANDERSON/GREENWOOD DIVISION

| | |
|---|---|
| Curtis G. Killian,                                    ) | |
|                                             ) | Civil Action No. 8:14-1078-TMC-KFM |
|                   Plaintiff,         ) | |
|                                             ) | **REPORT OF MAGISTRATE JUDGE** |
|         vs.                                ) | |
|                                              ) | |
| City of Abbeville, Patrick Neil                 ) | |
| Henderson, Nolan Wiggins, and David   ) | |
| E. McCuen, IV,                                     ) | |
|                                              ) | |
|                   Defendants.   ) | |

This matter is before the court on the defendants' motions to dismiss the plaintiff's civil conspiracy claim (docs. 7, 26). Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(A), and Local Civ. Rule 73.02(B)(2)(g) (D.S.C.), this magistrate judge is authorized to review all pretrial matters in employment discrimination cases and submit findings and recommendations to the district court.

The plaintiff filed this action on March 21, 2014, alleging claims of retaliation in violation of Title VII of the Civil Rights Act of 1964, as amended, and defamation against the defendant City of Abbeville and a claim of civil conspiracy against the individual defendants. On April 29, 2014, the defendants City of Abbeville, Wiggins, and McCuen filed a motion to dismiss the civil conspiracy claim (doc. 7). On May 16, 2014, the plaintiff filed his response to the motion to dismiss (doc. 12). On May 20, 2014, the defendants filed a reply to the plaintiff's response (doc. 14). On August 6, 2014, defendant Henderson filed a motion to dismiss the civil conspiracy claim (doc. 26). The plaintiff filed a response on September 26, 2014 (doc. 32), and defendant Henderson filed a reply on October 6, 2014 (doc. 34).

## **FACTUAL ALLEGATIONS**[1]

The plaintiff, a white male, worked for the City of Abbeville Police Department since March 1999 and was a lieutenant when he was suspended from the department in 2012. The plaintiff alleges in his complaint that around the first week of August 2011, he made a verbal complaint to Captain James "Skipper" O'Bannon that defendant Henderson had made repeated racist remarks in front of the plaintiff. At that time, Henderson was the Police Chief for the City of Abbeville. The plaintiff also complained of several other instances of racially and sexually inappropriate conduct by Henderson. Captain O'Bannon told the plaintiff that there was nothing that could be done about Henderson's behavior. The plaintiff, unsatisfied with O'Bannon's explanation, approached Abbeville City Councilman Joe Seawright with the same complaints he made to O'Bannon. Seawright advised that he would look into the matter.

On August 7, 2011, a few days after the plaintiff made the complaints of racist and sexist behavior to his supervisors, his wife died. He took one week of bereavement leave at this time. During this week, the plaintiff spoke with defendant McCuen, who at that time was the Assistant City Manager for the City of Abbeville,[2] and requested to take one more week to resolve matters. Instead, McCuen placed plaintiff on administrative leave until the plaintiff completed grief therapy and counseling. Subsequently, the plaintiff went to defendant Wiggins, who at that time was the City Manager for the City of Abbeville, and complained that other officers were not forced into mandatory therapy after a death in the family. He also claimed he was being forced to use his own leave time for the therapy. Wiggins initially resisted making any corrections until he finally agreed for the City to pay

---

[1]The facts set forth below are taken from the plaintiff's complaint (doc. 1).

[2]According to the complaint, defendant McCuen is now the City Manager.

the leave time as there was no policy on the matter.  The plaintiff was still required to go through therapy before returning to work.

While the plaintiff was on leave, he alleges that defendants Henderson, Wiggins, and McCuen "met together, schemed, planned and conspired between themselves and others to force the plaintiff from the police department because of plaintiff's complaints."  The plaintiff alleges that while he was out of work for over six weeks attending mandatory therapy he was advised by numerous co-workers and other citizens of Abbeville that it was known that there was a plan by Henderson and others to get rid of him or force him to resign.  The plaintiff claims there were many false and malicious rumors about him being circulated around by defendants.

After the plaintiff completed the mandatory therapy, he states that he tried to contact O'Bannon and Henderson numerous times about returning to work.  When the plaintiff reached O'Bannon, O'Bannon told him that McCuen said that he was not allowed back on Abbeville City property until McCuen said so.

Subsequently, O'Bannon contacted the plaintiff and told him, under Henderson's order, that the plaintiff was being demoted from a Lieutenant Detective over investigations and that he was being assigned to a patrol shift under a less experienced officer.  The plaintiff claims that the harassment and retaliatory treatment intensified after he returned to work. The plaintiff was transferred to another shift in late December 2011 or early January 2012 and claims he witnessed further unprofessional and discriminatory behavior by defendant Henderson. The plaintiff went to Councilman Seawright again and complained about racism, sexism, and retaliatory treatment.

During the last night he worked prior to his suspension, the plaintiff alleges that he witnessed inappropriate activity by two officers.  The next Monday, while in route to report the conduct to O'Bannon, the plaintiff was called by O'Bannon, who told the plaintiff

that he was being placed on administrative leave and would have to call "City Hall" with questions.

The plaintiff claims he was put on administrative leave for false and pretextual reasons. Defendants Henderson and McCuen told the plaintiff that SLED was investigating the plaintiff for alleged misconduct and that the plaintiff was to cooperate. After being on administrative leave for about a month, the plaintiff was terminated from employment by defendant McCuen on or about March 21, 2012.

As noted above, the plaintiff alleges claims for retaliation in violation of Title VII and a state law claim of defamation against the defendant City of Abbeville. The plaintiff alleges only a state law claim for civil conspiracy against the individual defendants, and the defendants have moved for dismissal of that claim. As pertinent to the civil conspiracy claim, the plaintiff alleges that the defendants acted outside "the scope of their employment and in abuse of their positions to harass [him] on a day-to-day basis, isolating and ostracizing him, resulting in [his] termination and blacklisting" (comp. ¶ 51). He further contends that his allegations "illustrate the hatred, ill will and personal agenda of the individual defendants acting outside the course and scope of their duties to inflict the special damages, such as blacklisting and interfering with prospective employers, which have occurred and to cause the Plaintiff harm emotionally and financially" (*id.* ¶ 53). He further claims these defendants encouraged lower level police officers to unnecessarily monitor him, directed officers to mistreat him, and falsely accused him of wrongdoing (*id.* ¶ 55). The plaintiff claims the defendants' actions caused him "to suffer increased stress and anxiety, and forced him to incur the costs, fees and reasonable attorney's fees of prosecuting this action" (*id.* ¶ 57). He seeks actual and punitive damages, costs, and fees from the individual defendants.

**APPLICABLE LAW AND ANALYSIS**

Federal Rule of Civil Procedure 12(b)(6) permits a party to move for dismissal if the opposing party fails to state a claim for which relief can be granted. Rule 8(a) sets forth a liberal pleading standard, which requires only a "'short and plain statement of the claim showing the pleader is entitled to relief,' in order to 'give the defendant fair notice of what . . . the claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). A motion to dismiss under Rule 12(b)(6) examines the legal sufficiency of the facts alleged on the face of a plaintiff's complaint. *See Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999); *Republican Party of N.C. v. Martin*, 980 F.2d 943, 952 (4th Cir. 1992) ("A motion to dismiss under Rule 12(b)(6) . . . does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses."). To survive a Rule 12(b)(6) motion, "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. The "complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). A claim is facially plausible when the factual content allows the court to reasonably infer that the defendant is liable for the misconduct alleged. *Id*. When considering a motion to dismiss, the court must accept as true all of the factual allegations contained in the complaint, *Erickson v. Pardus*, 551 U.S. 89, 94 (2007), and view them in the light most favorable to the non-moving party. *See De Sole v. United States*, 947 F.2d 1169, 1171 (4th Cir. 1991).

*At-Will Employee*

"A civil conspiracy is a combination of two or more persons joining for the purpose of injuring and causing special damage to the plaintiff." *McMillan v. Oconee Mem'l Hosp., Inc.*, 626 S.E.2d 884, 886 (S.C. 2006). The individual defendants first argue in their motions that, as an at-will employee, the plaintiff cannot bring a civil conspiracy claim under

South Carolina law regarding his termination of employment (doc. 7 at 1-2; doc. 26-1 at 2-4). In *Ross v. Life Ins. Co. of Virginia*, 259 S.E.2d 814 (S.C. 1979), the South Carolina Supreme Court ruled that the termination of at-will employment cannot support a cause of action for civil conspiracy. More recently, *Ross* was reaffirmed in the case of *Angus v. Burroughs & Chapin Co.*, 628 S.E.2d 261 (S.C. 2006) ("*Angus II*"). In that case, the Supreme Court explained that "[u]nder *Ross*, an at-will employee may not maintain a civil conspiracy action against her employer. Where the employment is at-will, the employee may be terminated at any time for any reason or no reason at all." 628 S.E.2d at 262. In *Angus*, the former employee had sued not her employer (Horry County) for conspiracy but rather four County Council members in their individual capacities. The Supreme Court and the Court of Appeals affirmed the dismissal of the conspiracy claim against those individuals. *See also Angus v. Burroughs & Chapin Co.*, 596 S.E.2d 67 (S.C. Ct. App. 2004) ("*Angus I*").

In the case of *Faile v. Lancaster County*, C.A. No. 0:11-2206-CMC, 2013 WL786447 (D.S.C. March 1, 2013), the Honorable Cameron McGowan Currie, (now) Senior United States District Judge, on a Rule 12(b)(6) motion, dismissed a former employee's civil conspiracy claim against Lancaster County and two county officials responsible for his termination. Judge Currie explained that in *Angus I*, "the South Carolina Court of Appeals held that an at-will employee cannot sue his employer, or anyone acting within his authority on behalf of his employer, for civil conspiracy arising out of his termination." *Faile*, 2013 WL786447, at *4. Judge Currie further explained that *Angus II* "did not disturb *Angus I*'s holding that an at-will employee could not maintain an action against the employer, or those authorized to act on behalf of the employer, for civil conspiracy that resulted in the employee's termination." 2013 WL 786447, at *4 n.6. Consequently, consistent with *Ross* and *Angus*, Judge Currie in *Faile* dismissed the civil conspiracy claim

not only against the governmental entity that employed the plaintiff but also against the two county officials who made the decision to terminate the plaintiff. *Id.* at *5.

The plaintiff argues[3] that the cases cited by the defendants would only prevent him from bringing a civil conspiracy claim against "his true former employer, the City of Abbeville," which he has not done (doc. 32 at 4). However, as discussed above, Judge Currie explained in *Faile* that *Angus II* "did not disturb *Angus I*'s holding that an at-will employee could not maintain an action against the employer, *or those authorized to act on behalf of the employer*, for civil conspiracy that resulted in the employee's termination." *Faile*, 2013 WL 786447, at *4 n.6 (emphasis added). Also as noted above, Judge Currie dismissed the civil conspiracy claim not only against the governmental entity that employed the plaintiff but also against the two county officials who made the decision to terminate the plaintiff's employment. *Id.* at *5. Here, the plaintiff concedes that defendant Henderson, as the Chief of Police, was "vested with authority to appoint, transfer and terminate officers, such as Plaintiff" (doc. 32 at 5). The plaintiff specifically alleges in his complaint that defendant McCuen, then the Assistant City Manager, terminated his employment (doc. 1, comp. ¶ 33), and he made complaints to Wiggins, then the City Manager, regarding McCuen placing him on administrative leave (*id.* ¶ 19). Based upon the foregoing, the

---

[3]The plaintiff also argues that defendant Henderson's motion to dismiss should be denied because it was filed after his answer to the complaint (doc. 32 at 2). However, in his answer, defendant Henderson reserved the right to file a motion pursuant to Rule 12(b)(6) (doc. 15, answer ¶ 1). *See Williams v. Equity Holding Corp.*, 498 F.Supp.2d 831 (E.D. Va. 2007) ("In their answer, defendants expressly asserted the defense of failure to state a claim for each count at issue in defendants' motion. As a result, defendants preserved their right to file a separate motion to dismiss for failure to state a claim at a later date, which they ultimately did. Accordingly, pursuant to Rule 12(b)(6), defendants' motion to dismiss for failure to state a claim is timely.") (citations omitted). Moreover, even if the motion was untimely because it was filed after the pleadings were closed, the motion would then be treated as a Rule 12(c) motion for judgment on the pleadings, which applies the same standard as a Rule 12(b)(6) motion. *Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999) (construing Rule 12(b)(6) motion as a Rule 12(c) motion and noting the distinction "does not have a practical effect"). Accordingly, this argument is meritless.

plaintiff cannot bring a claim against the individual defendants for civil conspiracy based on termination.

The plaintiff further argues that his "claim for civil conspiracy is not based solely on termination," and thus his claim is not governed by *Angus II* and *Ross* (doc. 12 at 4). The plaintiff argues that the case is similar to *Reed v. Aiken County*, C.A. No. 1:09-1755-MBS, 2010 WL 2985805 (D.S.C. July 26, 2010), in which the Honorable Margaret B. Seymour, (now) Senior United States District Judge, denied a motion to dismiss a civil conspiracy claim against the Aiken County Administrator brought by the former Aiken County Tax Assessor. In denying the motion, Judge Seymour stated:

> Contrary to the Individual Defendants' position, the *Ross* and the *Angus* cases do not address whether an at-will employee may maintain a civil conspiracy based upon poor treatment that allegedly leads to a resignation. In the court's view, the at-will employment doctrine articulated in *Angus* and *Ross* does not govern actions by employees based on harm other than termination such as isolation and ostracization. In this case, Killian [the County Administrator] did not terminate Plaintiff. Rather, Plaintiff alleges that Killian, in concert with Young [the County Council Chairman], engaged in a conspiracy to harm Plaintiff, isolate and ostracize him, and cause him special damages, which forced him to resign. Compl. ¶ 16. The *Ross* and *Angus* cases are inapposite. Plaintiff has properly stated a civil conspiracy claim against Killian.

*Reed*, 2010 WL 2985803, at *3. The plaintiff notes that he alleged in his complaint that the defendants acted outside the scope of their employment and conspired "to harass the Plaintiff on a day-to-day basis, isolating and ostracizing him, resulting in the Plaintiff's termination and blacklisting" (doc. 1, comp. ¶ 51). "This court agrees with Plaintiff that *Reed* stands for the principle that an at-will employee in a narrow set of circumstances may pursue a civil conspiracy claim against an employer arising out of harm other than termination." *Muhammad v. Westinghouse Elec. Co. LLC*, C.A. No. 3:12-3298-JFA, 2013 WL 5469982, at *9 (D.S.C. Sept. 30, 2013). However, the *Reed* case is distinguishable because the plaintiff in that case was not terminated from employment. Rather, the plaintiff

claimed that the conspiracy was to "ostracize" and "isolate" him, and this treatment allegedly forced his resignation. *Reed*, 2010 WL 2985803, at *3. Judge Seymour specifically relied upon this fact to distinguish *Ross* and *Angus*. *Id*. ("In this case, Killian did not terminate Plaintiff."). Here, the plaintiff specifically alleges termination as a basis for the conspiracy claim (doc. 1, comp. ¶ 1 "resulting in the Plaintiff's termination"; ¶ 57 "proximately caused the Plaintiff to be ostracized, isolated, terminated and essentially black-listed . . . "). Moreover, as will be discussed below, the allegations that he was "ostracized," "isolated," and "blacklisted" are identical to allegations in the plaintiff's Title VII and defamation claims, and therefore he has failed to make "factual allegations in furtherance of the conspiracy that are separate and independent from other wrongful acts alleged in [his] complaint. Therefore, this court finds *Reed* inapplicable." *Muhammad*, 2013 WL 5469982, at *9.

### *Additional Acts in Furtherance*

"A claim for civil conspiracy must allege additional acts in furtherance of a conspiracy rather than reallege other claims within the complaint." *Hackworth v. Greywood at Hammett*, LLC, 682 S.E.2d 871, 874 (S.C. Ct. App. 2009). In other words, the acts pled in furtherance of the conspiracy must be "separate and independent from other wrongful acts alleged in the complaint, and the failure to properly plead such acts will merit the dismissal of the claim." *Id*. at 875.

In response to the argument that he simply reincorporated allegations from his other causes of action against the defendant County in his claim against the individual defendants, the plaintiff contends that he also alleged that he was "demoted," "ostracized," and "singled out" by the individual defendants, and "[t]hese are not facts that are alleged in other causes of action" (doc. 32 at 6 n.2). While the phrase "singled out" does not occur in the complaint at all, the plaintiff does allege in his Title VII claim that he was the subject of "harassing actions, demotion and isolation by the Defendant City and its employees . . . after he made reports of racial and sexist harassment" (doc. 1, comp. ¶ 41). The plain,

ordinary meaning of "ostracize" is "to not allow someone to be included in a group," which is the same as "isolate" or "to put or keep someone or something in a place or situation that is separate from others." *See* Ostracize Definition, Merriam-Webster Dictionary, www.merriam-webster.com/dictionary/ostracize (last visited Jan. 21, 2015); Isolate Definition, Merriam Webster Dictionary, www.merriam-webster.com/dictionary/isolate (last visited Jan. 21, 2015).  Clearly, being "ostracized" and "isolated" and demoted are part of the Title VII allegations and are not additional acts in furtherance of the conspiracy. Moreover, the allegation of blacklisting is the focus of the plaintiff's defamation claim: "False and defamatory publications were also made by City personnel to prospective employers and others after termination that he was suing the City, which was false at the time, and resulted in further defamation and loss of prospective jobs" (doc. 1, comp. ¶ 46). Accordingly, the plaintiff has failed to plead "additional acts in furtherance of a conspiracy" that are "separate and independent from other wrongful acts alleged in the complaint," and thus the claim should be dismissed.

***Special Damages***

Lastly, the undersigned agrees with the defendants that even if the plaintiff had a viable civil conspiracy claim against them, he has failed to plead the special damages required for such a claim (doc. 32 at 7-8; doc. 14 at 4). "Special damages are those elements of damages that are the natural, but not the necessary or usual, consequence of the defendant's conduct." *Hackworth*, 682 S.E.2d at 874. "[B]ecause the quiddity of a civil conspiracy claim is the special damage resulting to the plaintiff, the damages alleged must go beyond the damages alleged in other causes of action." *Id.* at 874.  "If a plaintiff merely repeats the damages from another claim instead of specifically listing special damages as part of their civil conspiracy claim, their conspiracy claim should be dismissed." *Id*. at 875.

In the civil conspiracy claim, the plaintiff pleads that the alleged conspiracy caused him "to be ostracized, isolated, terminated and essentially black-listed in his

profession" and has also caused him to suffer "embarrassment, humiliation, stress and anxiety" and damage to his reputation (doc. 1, comp. ¶¶ 57-58). He describes his "special damages" in the complaint as "blacklisting and interfering with prospective employers" (*id.* ¶ 53).

While the plaintiff claims these special damages are "distinct in both word and nature from the other damages pled in his other claims" (doc. 32 at 7), the undersigned disagrees. In his Title VII claim, the plaintiff alleges that he suffered "harassing actions, demotion and isolation" and that he also "suffered both in his career and his reputation in the community" (doc. 1, comp. ¶¶ 41-42). He also claims actual damages for the termination as well as "back pay for time missed" (*id.* ¶ 42). In his defamation claim, the plaintiff also alleges that he was "blacklisted" in that the alleged defamation "affect[ed] his certification as a law enforcement officer"; "harm[ed] his reputation and ability to gain future employment"; and "resulted in ... loss of prospective jobs" (*id.* ¶ 46). In addition, the plaintiff alleges (1) that his "professional and personal reputation has been damaged"; (2) that his "ability to earn a living in the community has been hindered"; (3) that he "suffered emotional distress, mental anguish, humiliation and embarrassment"; and (4) that he "has suffered the loss of future earnings" (*id.* ¶ 48). Thus, in reviewing the damages from the civil conspiracy claim – blacklisting, termination, emotional distress, embarrassment, humiliation, damage to reputation, and interference with future employment – all such damages are also claimed in the Title VII and defamation causes of action.

The plaintiff argues in response that "the costs of prosecuting an action" are "properly considered special damage" (doc. 32 at 7). In his civil conspiracy claim, the plaintiff has alleged that he has "incur[red] the costs, fees and reasonable attorney's fees of prosecuting this action" (doc. 1, comp. ¶ 57). Notably, the plaintiff also seeks attorney's fees and costs in his Title VII action (*id.* ¶ 42). The plaintiff cites to the case of *Benedict College v. National Credit Systems, Inc.*, 735 S.E.2d 518 (S.C. Ct. App. 2012), in which the

plaintiff Benedict College had sued the defendant for breach of contract, fraud, fraud in the inducement, and unjust enrichment, and the defendant then counterclaimed for civil conspiracy. The defendant incurred attorney's fees and costs to defend the causes of action asserted by the college, and it was those attorney's fees and costs that the court deemed to be "special damages." *Id.* at 522.  Here, the plaintiff has incurred no costs of defense. Instead, the plaintiff is claiming the costs of actually prosecuting "this action," and thus the *Benedict College* case is inapplicable.   As the plaintiff has failed to plead special damages that "go beyond the damages alleged in other causes of action," the claim for civil conspiracy fails as a matter of law.

### CONCLUSION AND RECOMMENDATION

Wherefore, based upon the foregoing, this court recommends that the defendants' motions to dismiss the plaintiff's civil conspiracy claim (docs. 7, 26) be granted.[4]

IT IS SO RECOMMENDED.

s/ Kevin F. McDonald
United States Magistrate Judge

January 22, 2015
Greenville, South Carolina

---

[4] As dismissal is recommended on other bases, the undersigned has not addressed the defendants' "public official" and "intracorporate immunity" arguments (*see* doc. 7 at 1-2; doc. 14 at 1-2, 4-5).

12